**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

Julian Hammond (SBN 268489)
**HAMMOND LAW, PC**
1829 Reisterstown Rd., Suite 410
Baltimore, MD 21208
Telephone: (310) 601-6766
Facsimile: (310) 295-2385
jhammond@hammondlawpc.com

*Counsel for Plaintiffs and Interim Co-Lead Counsel for the Class*

[*Additional Counsel on Sig. Page*]

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TRACY DAVIS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BIRCHBOX, INC.,**<br><br>**Defendant.** | **Lead Case No.:**<br>**3:15-CV-00498-BEN-BGS**<br><br>**Case Consolidated with:**<br>**3:15-CV-00214-BEN-BGS**<br><br>THIS DOCUMENT RELATES TO: ALL CASES |
| **TIFFANY LAPUEBLA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BIRCHBOX, INC.,**<br><br>**Defendant.** | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:**      March 14, 2016<br>**Time**:      10:30 a.m.<br>**Courtroom**: 5A<br>**Judge**:      Hon. Roger T. Benitez |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................ii

I.   INTRODUCTION ..........................................................................................2

II.  PRE-SETTLEMENT PROCEEDINGS & STATUS OF THE LITIGATION .....3

    A. California's Automatic Renewal Law ..................................................3

    B. Factual Background ...........................................................................4

    C. Procedural Background ......................................................................4

    D. Discovery and Mediation ..................................................................5

    E. Summary of the Terms of Settlement ................................................6

    F. Summary of Notices and Notice Plan ................................................6

    G. Releases ..........................................................................................6

III. CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE ......8

    A. The Court Should Preliminarily Approve This Class Action
       Settlement Under Rule 23(e) of the Federal Rules of Civil Procedure ................8

    B. The Settlement Class Satisfies the Requirements of Federal Rule
       of Civil Procedure, Rule 23 for Conditional Certification .......................8

       1. FRCP 23(a) Requirements for Class Certification Have Been Met. ...............9

          *a. The Class is Ascertainable and Sufficiently Numerous* .............................8

          *b. The Commonality Requirement is Satisfied* ...............................................8

          *c. Plaintiffs' Claims are Typical of Those of the Putative Class* ...................9

          *d. Plaintiffs and Their Counsel Will Fairly and Adequately
             Represent the Class* ............................................................................9

       2. FRCP 23(b)(3) Requirements for Class Certification Have Been Met .........11

IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...............12

    A. The Settlement Was a Product of Informed, Non-Collusive Negotiations ............13

    B. The Strength of Plaintiff's Case Balanced Against the Settlement Amount .........13

    C. The Risk, Expense, Complexity, and Likely Duration of Further Litigation .........16

    D. The Extent of Discovery Completed And The Stage of The Proceedings .............16

    E. Views of Experienced Counsel Support the Reasonableness of the Settlement .....17

    F. Reaction of The Class Members to The Proposed Settlement .................................18

       1. The Proposed Class Notice Content and Procedure Are Adequate .............18

       2. Class Representatives' Incentive Award is Well-Justified and Reasonable .19

       3. Class Counsel's Application for Attorneys' Fees and Costs .........................20

V.  THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED .................21

VI. CONCLUSION ..........................................ERROR! BOOKMARK NOT DEFINED.

# TABLE OF AUTHORITIES

## Cases

*Barani v. Wells Fargo,*
   No. 12CV2999-GPC (KSC), 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ................16

*Carter v. Anderson Mech., LP,*
   No. EDCV 07–0025–VAP, 2010 WL 1946784 (C.D. Cal. May 11, 2010) ................13

*Cook v. Niedert,*
   142 F.3d 1004 (7th Cir. 1998) ........................................................................19

*Corson v. Toyota Motor Sales U.S.A., Inc., et al.,*
   No. CV-12-8499-JGB (C.D. Cal. August 3, 2015) ........................................9, 11

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974) ......................................................................................17

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) .................................................................passim

*Ikonen v. Hartz Mountain Corp.,*
   122 F.R.D. 258 (S.D. Cal. 1988) .......................................................................9

*Keegan v. American Honda Motor Co.,*
   284 F.R.D. 504 (C.D. Cal. 2012) .......................................................................9

*Lewis v. Starbucks Corp.,*
   No. 2:07-cv-00490-MCE, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ...................16

*Mullane v. Cent. Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950) ......................................................................................18

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................12, 16

*In re Northrop Grumman Corp. ERISA Litig.,*
   No. CV-06-06213, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ............................9

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) ..........................................................................12

*In Re Online DVD Rental Antitrust Litigation*,

   779 F.3d 934 (2015) ...........................................................................................18

*Phillips Petroleum Co. v. Shutts*

   472 U.S. 797 (1985) ...........................................................................................17

*Roberts v. Texaco, Inc.*,

   979 F. Supp. 1815 (S.D.N.Y. 1997) ...................................................................19

*Rodriguez v. W. Publ'g Corp.*,

   563 F.3d 948 (9th Cir. 2009) ..............................................................................12

*Satchell v. Fed. Exp. Corp.*,

   No. C 03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007) ......................13

*Silber v. Mabon*,

   18 F.3d 1449 (9th Cir. 1994) ..............................................................................18

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) ..............................................................................19

*In re Syncor ERISA Litig.*,

   516 F.3d 1095 (9th Cir. 2008) ............................................................................12

*Van Vranken v. Atl. Richfield Co.*,

   901 F. Supp. 294 (N.D. Cal. 1995) ....................................................................19

*Wren v. RGIS Inventory Specialists*,

   No. C–06–05778 JCS, 2011 WL 1230826 (N.D. Cal. April 1, 2011) ................12


**Statutes**

Business & Professions Code § 17200, et seq ...............................................................2

Business & Professions Code § 17535 ...........................................................................2

Business & Professions Code § 17600, et seq ............................................................2, 3

Business and Professional Code § 17602 .......................................................................4

Business & Professions Code § 17602(a)(1-3) ...............................................................2

Business and Professional Code § 17603 .......................................................................3

**Rules**

California Rules of Court, rule 3.769(e) ...................................................................20

Fed. R. Civ. P. 23 ..........................................................................................................8

Fed. R. Civ. P. 23(a) ......................................................................................................8

Fed. R. Civ. P. 23(a)(1) .................................................................................................9

Fed. R. Civ. P. 23(a)(2). ..............................................................................................10

Fed. R. Civ. P. 23(a)(4) ...............................................................................................10

Fed. R. Civ. P. 23(a)(1)-(4) ...........................................................................................8

Fed. R. Civ. P. 23(a) and (b)..........................................................................................8

Fed. R. Civ. P. 23(b)(3) ..................................................................................................9

Fed. R. Civ. P. 23(b)(3)(A)-(D) ...................................................................................11

Fed. R. Civ. P. 23(e) ......................................................................................................8

Fed. R. Civ. P. 23(e)(2) ...........................................................................................8, 12

**Other**

Manual for Complex Litigation (4th ed. 2004) § 21.61 .................................................8

Newberg on Class Actions (5th ed. 2014) § 13.50 ......................................................16

TABLE OF AUTHORITIES

Plaintiffs hereby submit this Memorandum of Points and Authorities in support of their unopposed request for preliminary approval of a class action settlement between Plaintiffs Tracy Davis and Tiffany Lapuebla ("Plaintiffs") and Defendant Birchbox, Inc.'s ("Birchbox" or the "Defendant").

# I.    **INTRODUCTION**

This consumer class action arises from Plaintiffs' allegations that Defendant failed to comply with California's Automatic Renewal Law (Business & Professions Code § 17600, *et seq.*) ("ARL"), which imposes detailed information, notice, and consent requirements on businesses that make automatic renewal or continuous service offers to California consumers. Plaintiffs brought this consolidated class action on behalf of themselves and all similarly situated California consumers who purchased subscriptions to Birchbox's monthly deliveries of make-up and personal care products that automatically renewed from December 1, 2010 through March 6, 2015.  In their complaint, Plaintiffs alleged that Birchbox (a) failed to disclose to consumers the automatic renewal offer terms in a "clear and conspicuous manner before the subscription or purchase agreement [was] fulfilled and in visual proximity . . . to the request for consent to the offer", (b) failed to obtain Plaintiffs' and Class Members' affirmative consent to the agreement containing the automatic renewal offer terms before charging their credit cards, and (c) failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information about how to cancel in a manner that was capable of being retained by the consumer, all in violation of Business & Professions Code § 17602(a)(1-3), the Unfair Competition Law (Business & Professions Code § 17200 *et seq*. ("UCL"), and the False Advertising Law (Business & Professions Code § 17535) ("FAL").

After almost one year of litigation and a full-day mediation session with a highly regarded and experienced mediator Bruce Friedman, the parties have entered into a Settlement Agreement and Release ("Settlement Agreement", "Settlement" or "SA"), which is now presented to the Court for preliminary approval.  The Settlement

2

Agreement is submitted herewith, as Exhibit 2 to the Declaration of Julian Hammond, also submitted herewith ("Hammond Decl.").

For the reasons set forth below, Plaintiffs assert that the settlement is fair and reasonable, and warrants preliminary approval. Defendant does not oppose this motion. Accordingly, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the proposed Settlement, (2) approve the proposed notice procedure and the form, manner, and content of the notice, (3) stay all proceedings until the Court renders a final decision on the approval of the Settlement, (4) conditionally certify the proposed Settlement Class, (5) conditionally appoint Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel, and (6) schedule a hearing for final approval.

## II. PRE-SETTLEMENT PROCEEDINGS AND STATUS OF THE LITIGATION

### A. California's Automatic Renewal Law

As of December 1, 2010, California Senate Bill 340, codified in the Business and Professional Code at § 17600 *et seq*., imposed very specific information, notice and consent requirements on businesses that make automatic renewal or continuous service offers to California consumers. This law was passed in response to increasing complaints from consumers about unwanted charges on their credit cards for products and/or services that they did not explicitly request or know they were agreeing to. Hammond Decl. at ¶ 24; Kazerounian Decl. ¶ 31. The ARL's core requirements are that (1) businesses must clearly and conspicuously disclose automatic renewal terms of any offer, as defined by the statute, (2) they must obtain a consumer's affirmative consent, and (3) they must provide consumers with an acknowledgment containing the terms of the automatically renewing offer and cancellation information. *Id*. Pursuant to Business and Professional Code § 17603, Plaintiffs assert that, where a business sends products to a consumer under automatic renewal of a purchase without first obtaining the consumer's affirmative consent, "the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer."

3

### B.    Factual Background

Birchbox is an internet-based company that sells men's and women's subscription plans for the monthly delivery of beauty products, including sample make-up and personal care products through its website, www.birchbox.com. Hammond Decl. at ¶ 12; Kazerounian Decl. ¶ 19. Subscriptions renew automatically, unless a consumer cancels before the auto-renewal date. *Id.* The complaint alleges, and Plaintiffs contend that evidence shows, that Birchbox's Terms and Conditions do not sufficiently disclose to consumers that subscriptions renew automatically. In particular, Plaintiffs contend that Birchbox's Terms and Conditions do not indicate that the subscriptions auto-renew; do not inform consumers about how to cancel subscriptions; do not provide length of term(s); and allegedly do not set out any of the information that is provided about automatic renewal from the rest of the text in a clear and conspicuous manner. *See* § 17602; (b); Complaint at ¶¶ 27-28 & Ex. 2 (Terms and Conditions). The Complaint also alleges, and Plaintiffs further contend that the evidence shows, that Birchbox's sign-up process failed to comply with the statutory requirements in a number of ways. *See* Complaint, ¶¶ 29-37 & Exs. 3-10.

### C.    Procedural Background

Plaintiff Lapuebla filed her action on January 30, 2015 in the Southern District of California, San Diego. *See LaPuebla v. Birchbox*, Case No. 3:15-cv-00214-BEN-BGS (Dkt. 1).   Subsequently, Plaintiff Davis filed her action on March 4, 2015 in the Southern District of California, San Diego. Dkt. 1. On April 30, 2015 the Court granted Plaintiffs' unopposed joint motion to consolidate the *Davis* and *LaPuebla* actions, and appointed Hammondlaw and Kazerouni Law Group as interim co-lead counsel. Dkt. 18. On May 14, 2015 Plaintiffs filed their consolidated amended complaint ("Complaint"). Dkt. 21.

On May 1, 2015, following the Court's order granting Plaintiffs' motion to consolidate, Birchbox filed its motion to transfer venue to the United States District Court for the Southern District of New York pursuant to the forum selection clause

4

contained in Birchbox's Terms and Conditions. Dkt. 19. After fully briefing the motion, the parties stipulated to stay the proceedings in order to attend mediation. Dkt. 23- 24; 26.[1]

Thereafter, the Parties engaged in informal discovery and engaged Bruce Friedman as a neutral mediator. Hammond Decl. ¶¶ 14-15; Kazerounian Decl. ¶¶ 21-22. Although the Parties strongly disagreed on the relative merits and defenses, they analyzed the probability of attaining class certification and considered the overall merits of the claims and defenses. Hammond Decl. ¶ 13; Kazerounian Decl. ¶ 20. Defendant's data, including data regarding the size of the Class and revenue generated by Defendant's auto-renewing subscriptions, was also analyzed. Hammond Decl. ¶ 14; Kazerounian Decl. ¶ 21. Thus, the Parties were sufficiently informed to arrive at a realistic settlement valuation of this action. *Id.*

### D.   <u>Discovery and Mediation</u>

The parties engaged in informal discovery. Defendant produced information regarding Birchbox's subscription-based revenue from California consumers broken down by subscription type (Men's or Women's). Hammond Decl. at ¶ 14; Kazerounian Decl. ¶ 21. Birchbox also provided the amount of revenue generated by the initial subscription payments and all subsequent payments received from Class Members. *Id.* The parties also participated in numerous telephone calls and e-mail exchanges leading up to the mediation. *Id.*

On September 16, 2015 the parties attended a full-day mediation before Mr. Friedman in San Francisco. Hammond Decl. ¶ 15; Kazerounian Decl. ¶ 22. The parties were unable to reach a settlement at that time but agreed to continue their settlement negotiations through Mr. Friedman. Hammond Decl. ¶ 17; Kazerounian Decl. ¶ 24. On October 29, 2015 the Parties met at Defendant's counsel's office in New York City and

---

[1] Defendant has not filed its answer to Plaintiffs' Consolidated Amended Complaint pursuant to the Court's order extending time for Defendant to respond until 30 days following the Court's ruling on the pending motion to transfer venue. Dkt. 22.

tentatively reached an agreement on the consideration for the class. *Id*. This agreement was reached prior to engaging in any discussions regarding attorneys' fees, costs, or incentive awards to Plaintiffs. Hammond Decl. ¶ 20; Kazerounian Decl. ¶ 27. Following two more months of negotiation through Mr. Friedman, the parties reached a settlement in general terms, which was later reduced to writing and are more fully specified in the Settlement Agreement.  Hammond Decl. ¶ 21; Kazerounian Decl. ¶ 28.

### E.    Summary of the Terms of Settlement

The Settlement resolves all of the claims of Plaintiffs and the proposed Class against Defendant. In summary, the Settlement Class Members consists of "all persons who disclosed a California billing address when ordering an Annual or Monthly Rebillable Subscription from Birchbox, including Men's and Women's Rebillable Subscriptions, and that automatically renewed at any time between January 1, 2011 and March 6, 2015." SA § 1.1.  The Settlement provides Class Members credits good for the purchase of future products or subscriptions from Birchbox its website. Hammond Decl. ¶ 19; Kazerounian Decl. ¶ 26. Class Members who subscribed to the Women's Rebillable Subscription will each receive a total of $10 credit, provided in two equal $5 amounts, to be used separately; and Class Members who subscribed to the Men's Rebillable Subscription will each receive a total of $20, provided in two equal $10 amounts, to be used separately. *Id*. These credits represent the value of a one-month subscription for each Class Member. *Id*. Class Members need not submit a claim form in order to receive a credit; each Class Member who does not seek exclusion will receive the applicable credit. *Id*. In addition to the monetary relief, Defendant has agreed to modify its disclosures to clearly and conspicuously describe the automatic renewal offer terms and to require subscribers to affirmatively consent to the offer in compliance with the ARL. Hammond Decl. ¶ 18; Kazerounian Decl. ¶ 25; SA § 2.2. Defendant acknowledges that these modifications are a result of the Complaint. *Id*.

The Settlement Agreement also provides for Defendant to bear all costs of notice and administration; to pay Class Counsel an attorney-fee award of up to $300,000

(subject to this Court's approval) for attorneys' fees and costs; and to pay a service award of up to $2,500 to each Named Plaintiff. SA §§ 2.6 and 2.4.

**F.  Summary of Notices and Notice Plan**

After reviewing the available contact information for Class Members, the parties agreed on two forms of notice: (a) Email Notice (Exhibit C to the SA) and (2) Long-Form Notice (Exhibit B to the SA).  The Email Notice will include a summary of settlement terms, information on how to opt-out or object to the settlement, and a link to the Settlement Website, where more information, including the Long-Form Notice, can be found. SA §§ 1.11 and 3.3(c); Ex. C thereto. The Long-Form Notice will include complete terms and provisions of the settlement; the benefit that settlement provides for the Class Members; attorneys' fees and Class Representative award; and the date, time, and place of the final settlement approval fairness hearing. SA §§ 1.09 and 3.3(c); Ex. B thereto. Both Notices inform the Class Members that they will be bound by the judgment and that they have the right to appear in or be excluded from the Litigation. Both Notices further provide the deadline for submitting objections, and the Long-Form Notice describes the process by which a party may appear or opt out of the Settlement Class.

The Settlement Administrator will, among other things, send the Email Notice and postcard notice as applicable; set up the designated website, which will contain the Long-Form Notice, the Complaint, and the Preliminary Approval Order; and distribute the credits to Class Members who do not exclude themselves.  SA §§ 2.1(a), 3.3, 3.6. The Settlement Administrator will also mail a postcard to the most recent mailing address for those e-mails that bounce back, and will immediately conduct a standard skip trace if the postcard is returned without a forwarding address. *Id*. at § 3.3. All objections and requests for exclusion must be completed and post-marked no later than ninety (90) days after Preliminary Approval Order.  SA §§ 3.8, 3.9.

**G. Releases**

The release set out in the proposed Settlement corresponds to the claims made against Defendant in the Complaint filed on May 14, 2015. SA § 4.2. In exchange for

7

receiving an Incentive Awards, Plaintiffs will also give an additional general release against Defendant.

## III.    CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

### A.    **The Court Should Preliminarily Approve This Class Action Settlement Under Rule 23(e) of the Federal Rules of Civil Procedure.**

A certified class action may not be dismissed, compromised or settled without approval of the Court. *See* Fed. R. Civ. P. 23(e). Proper review and approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement after submission of a written motion; (2) dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. *Manual for Complex Litigation* (4th ed. 2004), § 21.61.  The decision to approve or reject a proposed settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Federal Rule of Civil Procedure 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (Fed. R. Civ. P. 23(a) and (b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (Fed. R. Civ. P. 23(e)(2)).  Here, both of these requirements for preliminary approval of this class action settlement are satisfied.

### B.    **The Settlement Class Satisfies the Requirements of Federal Rule of Civil Procedure, Rule 23 for Conditional Certification.**

Rule 23(a) sets out four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may

only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). All of these requirements are met here.[2]

### 1. FRCP 23(a) Requirements for Class Certification Have Been Met.

#### a. The Class is Ascertainable and Sufficiently Numerous.

Ascertainability is satisfied when it is "administratively feasible for the court to determine whether a particular individual is a member" of the proposed class. *In re Northrop Grumman Corp. ERISA Litig.*, No. cv-06-06213, 2011 WL 3505264 at *7 n. 61 (C.D. Cal. Mar. 29, 2011).The numerosity prerequisite demands that the class be large enough that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty (40) members. See, e.g., *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (40 class members satisfies numerosity); *Keegan v. American Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012)(same). These requirements are met. Defendant maintains records of all California consumers who purchased a subscription to Birchbox during the Class Period. Thus, ascertainability is met. *Corson v. Toyota Motor Sales U.S.A., Inc., et al.*, CV 12-8499-JGB (C.D. Cal. August 3, 2015) (Order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement). According to Birchbox's records, there are 147,915 putative Class Members. SA § 1.1. This figure meets the numerosity requirement.

#### b. The Commonality Requirement is Satisfied.

The commonality prerequisite for class certification concerns the existence of questions of law and/or fact common to the class and is "construed permissively."

---

[2] Defendant has stipulated to the certification of the proposed class and appointment of the proposed class representatives and Class Counsel, for purposes of settlement approval only, but has reserved its positions opposing certification in the event the settlement is not approved.

*Hanlon*, 150 F.3d at 1019. The common questions here include (1) whether Birchbox failed to disclose the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer; (2) whether Birchbox failed to obtain consumers' affirmative consent to the automatic renewal offer terms; and (3) whether Birchbox failed to provide an acknowledgement, capable of being retained by the consumer, that contained the automatic renewal offer terms and information on how to cancel. Complaint, ¶ 43.b. Plaintiffs contend that all of the Class Members were led through the same sign-up process and encountered the same failed disclosures to the same extent. Complaint, ¶¶ 29-37. The existence of these policies as uniformly applied to the entire Class and the question of whether those policies violated the ARL and the UCL satisfy the commonality requirement of Rule 23(a)(2).

### c.  Plaintiffs' Claims are Typical of Those of the Putative Class.

The typicality prerequisite of Rule 23(a) is met if the named Plaintiffs claims "are reasonably co-extensive with those of absent class member; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here typicality is satisfied because the Plaintiffs' claims are the very same as the claims brought by Class Members – they purchased Birchbox subscriptions through the same sign-up process, were presented with the same disclosures, were exposed to the same allegedly unwanted recurring subscription charges, and seek the same type of relief. Complaint ¶ 43.c.

### d.  Plaintiffs and Their Counsel Will Fairly and Adequately Represent the Class.

The adequacy prerequisite permits class certification only if the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This means that the proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020.  Neither Plaintiffs nor their counsel have a conflict with any putative class member as their interests are virtually coextensive with the Class' interests. Complaint ¶ 43.d. Similarly, Plaintiffs' Counsel has and will

10

continue to vigorously prosecute the action on behalf of the Plaintiffs and the Class. Class Counsel has significant experience litigating class actions and have been certified by numerous state and federal courts as competent and adequate class counsel. Hammond Decl., ¶¶ 6-9; Kazerounian Decl. ¶¶ 6-13.

### 2.  FRCP 23(b)(3) Requirements for Class Certification Have Been Met.

Under Rule 23(b)(3), plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating controversy." Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Hanlon*, 150 F.3d at 1022. In other words, courts must determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members. *Hanlon*, 150 F.3d at 1022-23.  Here, the common questions of Defendant's alleged failure to adhere to the California ARL's disclosure, consent, and acknowledgment requirements, and whether that failure violates the law, predominate over any potential individualized issues.

Further, this class action would be a superior method of adjudication compared to a multitude of individual suits.  To determine if the class approach is superior, courts consider: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning controversy already commenced by or against members of the class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  "Where parties seek class certification for settlement purposes only, courts need not consider the final two factors which address trial manageability." *Corson v. Toyota Motor Sales U.S.A., Inc., et al.*, CV 12-8499-JGB (C.D. Cal. August 3, 2015) (citing *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801 at*9 (E.D. Cal. Nov. 27, 2012)). Here, a class action device is preferable because the Class Members do not have a strong

11

interest in controlling their individual claims, as the individual prosecution of the claims would be identical to and duplicative of the class action litigation. The use of the class action mechanism here would also efficiently resolve numerous identical claims at the same time while avoiding the waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation. Because there are no manageability issues presented by the resolution of the Class' identical ARL and UCL claims, a class action is the superior method for adjudication the claims in this action.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Included in this analysis are considerations of "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009).

Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. April 1, 2011); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel . . . because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation"). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Applying these factors to this case, it is clear that the proposed settlement is fair, reasonable, and

adequate.

**A. The Settlement Was a Product of Informed, Non-Collusive Negotiations**

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining as it was here. *See Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action settlement where parties reached agreement after several months of negotiation and the record contained no evidence of collusion). The ongoing assistance of a skilled class-action mediator confirms that the settlement was non-collusive. *Satchell v. Fed. Exp. Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Carter v. Anderson Mech., LP*, No. EDCV 07–0025–VAP, 2010 WL 1946784, at *7 (C.D. Cal. May 11, 2010) (citing *Satchell*). Furthermore, where counsel are well-qualified to represent the proposed class in a settlement based on their extensive class action experience and familiarity with the strengths and weakness of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter*, 2010 WL 1946784, at *8 ("Counsel's opinion is accorded considerable weight.").

As detailed more fully in the declarations of Class Counsel, the settlement is the result of settlement negotiations between the parties conducted at arm's length and informed by substantial investigation. Hammond Decl. ¶¶ 10-17; Kazerounian Decl. ¶¶ 17-24. The mediation session was conducted by a skilled, experienced mediator, Bruce Friedman. Hammond Decl. ¶ 14; Kazerounian Decl. ¶ 21. Class Counsel has extensive background in complex litigation and has experience litigating and settling similar ARL class actions. Hammond Decl., ¶¶ 7-9; Kazerounian Decl. ¶¶ 6-13. These factors support a finding that the Settlement is fair, reasonable, and adequate.

**B. The Strength of Plaintiffs' Case Balanced Against the Settlement Amount**

The proposed Settlement results in a substantial benefit valued at $1,572,240 on behalf of over 147,000 class members that does not require Class Members to submit any claims. Hammond Decl. ¶ 19; Kazerounian Decl. ¶ 25. Each Class Member who

does not opt out will receive either $10 or $20 of Birchbox credit that can be used to purchase any Birchbox goods or subscriptions for up to one year following issuance. *Id*. The Class will also receive significant benefit from modifications to Defendant's enrollment process and website terms and conditions which Birchbox made in response to the filing of this Action. *Id*.; SA at § 2.2.

This Settlement is a fair compromise given the litigation risks and uncertainties presented by continued litigation. While Plaintiffs are confident in their position and believe their claims are strong, the monetary value of their claims is low, and the risks of litigation are high. Plaintiffs' Counsel is also experienced and realistic enough to know that the recovery and certainty achieved through settlement, as opposed to the uncertainty inherent in class certification and the trial and appellate process, weighs heavily in favor of settlement.  This is especially true where there is no precedent on point as here, given that the ARL is a recently enacted and untried law and no plaintiff has yet obtained either class certification or a class-wide remedy by court order in a fully litigated (i.e., not settled) action brought under the ARL, to counsel's knowledge. Hammond Decl. ¶¶ 23-26; Kazerounian Decl. ¶¶ 30-33.

Plaintiffs have to overcome a number of hurdles before be able to try this matter to a conclusion. Birchbox vigorously contests liability, the amount of damages, and the propriety of class certification.  Although Plaintiffs dispute Birchbox's positions, they understand and considered the risks. First, Plaintiffs took into consideration Defendant's pending motion to transfer venue pursuant to its New York forum selection clause. Furthermore, Defendant has indicated that, if granted, it would then argue that New York law applies pursuant to the governing law provision.  Although Plaintiffs dispute Defendant's positions, if Defendant was successful in arguing that New York law applies, this would jeopardize Plaintiffs' claim under ARL or the UCL. Hammond Decl. ¶¶ 12 and 29; Kazerounian Decl. ¶¶ 19 and 36. Even if Defendant's motions were denied, Plaintiffs would have to prevail on (1) class certification, and (2) on the merits. Hammond Decl. ¶¶ 13 and 31; Kazerounian Decl. ¶¶ 20 and 38. For example, Plaintiffs

faced the risk that the Court might conclude that the disclosures Birchbox provided fully complied with the ARL, or that Birchbox complied in good faith and therefore could not be held liable under Bus. & Prof. Code § 17604 (describing good faith compliance doctrine). Hammond Decl. ¶ 13.

Even assuming Plaintiffs obtained a judgment against Defendant at trial, the damages that would be awarded are uncertain, as compared to settling now and providing each Class Member with credits equal to the amount of a one-month Birchbox subscription. Hammond Decl. at ¶ 13; 26; 31; Kazerounian Decl. ¶¶ 20, 31, 38.

Pursuant to Bus. & Prof. Code § 17603, anytime a business sends goods under "automatic renewal of purchase," the goods are deemed a gift. Thus, there is a risk that the Court would determine that Plaintiffs could not recover for the initial subscription month because only the subscription for the subsequent months could be considered automatic *renewal* of purchase. *Id.* Defendant has also asserted that Plaintiffs cannot not properly seek recovery because they never alleged that they were not aware that Birchbox's subscription renewed automatically. Moreover, given that Class Members had Birchbox's goods delivered monthly to their doorsteps, even those Class Members who were unaware of the automatic renewal immediately upon signing up would have learned of it upon receiving the deliveries. Although Plaintiffs dispute the arguments, should the Court adopt such arguments, damages could be limited to a refund of one month subscription. Thus, while Plaintiffs contend that a jury could require Defendant to refund the value of subscription for all automatically renewing months during the Class Period (i.e., the first or second month through the last month of subscription), such a result is not guaranteed. Hammond Decl. ¶ 26; Kazerounian Decl. ¶ 33.

Each of these hurdles poses substantial risks to Plaintiffs' ability to win the case and make a recovery on behalf of the class, for reasons described in detail in the Hammond Declaration, ¶¶ 12-13 and 26-31; Kazerounian Decl. ¶¶ 19-20 and 33-38. While Plaintiffs believe they could prevail on the merits, they also recognizes the risk that Defendant might prevail instead—in which case the class could recover nothing.

In sum, the settlement, negotiated at arms' length, is fair and reasonable in light of the strengths and weaknesses of Plaintiffs' case. The settlement value is greatly enhanced and further shown to be adequate by the fact that Defendant has agreed to change the disclosures regarding the automatic renewal offer to make them clear and conspicuous and to require that consumers affirmatively consent to the automatic renewal offer. Hammond Decl. ¶ 18; Kazerounian Decl. ¶ 25; SA at § 2.2.

## C.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Further litigation of this case poses real risks for a number of reasons, and would result in significant additional costs and delay. First, the Court would rule on Defendant's pending motion to transfer to venue to New York. Hammond Decl. at ¶ 30; Kazerounian Decl. ¶ 37. Defendant has indicated that, if successful on that motion, it would argue that New York law applies, thus jeopardizing Plaintiffs' ARL and UCL claims. *Id*. If the motions were denied, Plaintiffs would file a motion for class certification. Hammond Decl. ¶ 31; Kazerounian Decl. ¶ 38. A hearing would be scheduled and time would have to be allowed to complete the extensive briefing and discovery issues. *Id*. Then, there would still be a risk of non-certification. *Id*.  Further, time would have to be allowed for merits discovery, dispositive motions, trial preparation, and trial. *Id*. There would be a risk of unfavorable rulings on the merits and the cost of such litigation would be substantial. *Id*. Furthermore, it would delay the final outcome by several years and put Class Members at risk of recovering nothing at all.  *Id*. In contrast, this settlement will conserve the resources of the parties and the Court, and provides Class Members with a meaningful recovery on their claims.  Hammond Decl. ¶ 33; Kazerounian Decl. ¶ 40. See *Nat'l Rural*, 221 F.R.D. at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

## D.  The Extent of Discovery Completed And The Stage of The Proceedings

As discussed above, and as further described in the declarations of Class Counsel (Hammond Declaration ¶¶ 10-11 and 14; Kazerounian Decl. ¶¶ 18-19 and 21), Plaintiffs

16

and Defendant engaged in significant investigation and evaluation of the factual and legal strengths and weaknesses of their respective cases. Birchbox produced, and Plaintiffs' counsel carefully analyzed, information regarding its subscription-based revenue. Hammond Decl. ¶ 14; Kazerounian Decl. ¶ 21. Despite the litigation being at a relatively early stage, Plaintiffs have engaged in investigation and discovery that is sufficient to inform them decision to settle this case. *Id*. Accordingly, the Parties certainly have a clear view of the strengths and weaknesses of their case – "sufficient information to make an informed decision about settlement." Newberg on Class Actions § 13.50 (5th ed. 2014) (quoting *Barani v. Wells Fargo*, No. 12CV2999-GPC (KSC), 2014 WL 1389329, at *5 (S.D. Cal. Apr. 9, 2014); *See Lewis v. Starbucks Corp.*, No. 2:07-cv- 00490-MCE, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.").

### E. Views of Experienced Counsel Support the Reasonableness of the Settlement

Class Counsel has represented Plaintiffs in numerous class-action lawsuits in California, has extensive experience in class action litigation, and has been determined by numerous courts to be adequate class counsel. Hammond Decl. at ¶¶ 7-9; Kazerounian Decl. ¶¶ 6-13.

Class Counsel considers the settlement to be fair, reasonable, and adequate. As stated above, the monetary benefit the settlement provides to Class Members is meaningful and fair, especially considering (1) that if the case went to trial and Plaintiffs won, Plaintiffs' damages are uncertain; and (2) the additional risks facing Plaintiffs in further litigation including Defendant's pending motion to transfer venue, and the risks of non-certification and losing on the merits in trial. Hammond Decl. ¶¶ 26; 30-31; Kazerounian Decl. ¶¶ 33, 37-38. Based on Class Counsel's experience, Class Counsel believes that the instant case settled on excellent terms. Hammond Decl. ¶ 33, Kazerounian Decl. ¶ 40.

//

**F. Reaction of The Class Members to The Proposed Settlement**

It is premature to address this factor since notice has not yet been sent out. The settlement, however, confers meaningful changes to Birchbox's business overall practices and significant monetary benefits to the Class Members. This promises a very favorable response.

**1. The Proposed Class Notice Content and Procedure Are Adequate**

Rule 23(e) requires notice that describes "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane*, 696 F.3d at 826. In order to protect the rights of absent class members, courts must provide the best notice practicable of a potential class action settlement. See *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Rule 23(e) does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

In the instant case, the proposed Long-Form Notice and Email Notice (collectively "Notices") meet these standards since they provide, in simple, plain language, all the information a reasonable person would need to make a fully informed decision about the settlement including: (a) the benefit that settlement provides for the Class Members, (b) the amount class counsel will seek in fees, litigation expenses, and incentive awards, (c) the process by which a party may appear or opt out of the Settlement Class, (d) the deadline for objecting and (e) the date, time, and place of the final settlement approval fairness hearing. See *In Re Online DVD Rental Antitrust Litigation*, 779 F.3d 934, 947 (2015). SA at § 1.9; Ex. B. Both Notices inform the Class that they will be bound by the judgment unless they exclude themselves from the litigation. Exhibits B and C to the SA. Therefore, the Court should approve the Notice content.

The procedure for distributing notice meets the requirement that it have "a reasonable chance of reaching a substantial percentage of the class members." *Cartt v. Superior Court,* 50 Cal.App.3d 960, 974 (1975). Here, the Settlement Administrator will operate a designated website which will contain, among other things, the Long-Form Notice. SA § 3.3(a). Email Notice providing the web address of the internet posting will be sent electronically to the e-mail addresses in Birchbox's records used by Class Members to register for Birchbox's subscription. SA § 3.3(a). For those e-mails that bounce back, the Settlement Administrator will mail a postcard to the most recent mailing address for the Class Members that is contained in Birchbox's records. SA § 3.3(a). An e-mail notice will be sent a second time twenty days after the first Email Notice is sent. SA § 3.3(a). As such, the Notice is likely to reach most, if not all, Class Members. Therefore, the Court should approve the process for distributing Notice.

### 2. Class Representatives' Incentive Award is Well-Justified and Reasonable

The proposed incentive awards to each Named Plaintiff of $2,500 allocated by the Settlement is reasonable and should be approved because class representatives in class action litigation are eligible for reasonable participation payments to compensate them for the risks assumed and efforts made on behalf of the Class. *See Staton v. Boeing Co.,* 327 F.3d 938, 976 (9th Cir. 2003). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation," sometimes in amounts many times greater than requested here. *See Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action); *In Re Online DVD Rental Antitrust Litigation,* 779 F.3d 947-948 (upholding incentive awards of $5,000 for each of nine class representatives). The factors courts use in determining the amount of service awards include (1) time and effort put into the litigation (*see Van Vranken,* 901 F. Supp. at 299; *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)); (2) whether the litigation will further the public policy underlying the statutory scheme at the core of the litigation (*see Roberts v. Texaco, Inc.,* 979 F. Supp. 1815 at 201, n. 25

(S.D.N.Y. 1997); (3) risks assumed by Plaintiffs (*Id*. at 202, *Cook*, 142 F.3d at 1016); and (4) the proportion of the payments relative to the settlement amount (*see Staton v. Boeing, Co*., *327 F.3d 938, 977 (9th Cir.2003*). All of the above factors support the service award requested here.

First, the modest incentive awards of $2,500 to each Named Plaintiff are appropriate to compensate them for the substantial time and effort they have expended in this litigation. In agreeing to serve as Class Representatives, they formally accepted the responsibilities of representing the interests of all Class Members. Hammond Decl. at ¶ 34; Kazerounian Decl. ¶ 41. Plaintiffs assisted in preparing and evaluating the case for filing and for mediation, assisted class counsel in reviewing information, and provided Class Counsel with guidance to evaluate and approve the proposed settlement on behalf of the Settlement Class. *Id*. Finally, Defendant does not oppose the request for an incentive award of $2,500 to each Plaintiff. SA § 2.4.

Second, the participation and assistance provided by the Class Representatives was critical to the success of this litigation and the enforcement of the ARL. Without the named Plaintiffs' commitment to come forward and serve as Class Representatives, this litigation, which challenges businesses' alleged misleading and/or deceptive practices related to the failure to disclose the terms of their automatically renewing subscriptions, would not be possible. *Id*.

Third, the Class Representatives assumed several risks by agreeing to formally represent the Class. For one, they agreed to assume the potential obligation to pay Defendant's costs, a potentially large amount, if they did not prevail at trial. The other Class Members in this case did not assume this risk. *Id*.

Fourth, the $2,500 enhancement awards represent approximately 0.15% of the $1,572,240 settlement value. The amount requested for the enhancement award is modest

in comparison to such awards approved by other courts. Accordingly, the $2,500 enhancement award to each named Plaintiff should be preliminarily approved.[3]

### 3. **Class Counsel's Application for Attorneys' Fees and Costs**

The proposed Settlement contemplates that Class Counsel shall be entitled to apply to the Court for an award of attorneys' fees, costs, and litigation expenses to be paid by Birchbox separate and apart from the credits paid to Class Members. Attorneys' fees and costs were not discussed until all the material terms of the settlement were agreed upon and will be paid by Birchbox, separate and apart from any consideration being paid directly to the Class. Hammond Decl. at ¶ 34. Defendant has agreed not to oppose such application by Class Counsel so long as the amounts requested are not more than $300,000. SA § 2.3(a). Such attorneys' fees and costs shall be paid within five (5) business says after the Final Settlement Date and subject to the terms of the Settlement Agreement. *Id*. at 2.3(b)

## V.    THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is the formal Final Approval Hearing. This hearing allows the Court to hear all evidence and the arguments necessary to determine whether the settlement is fair, adequate, and reasonable. Plaintiffs request that the hearing be held no earlier than July 18, 2016 to allow sufficient time for any Class Members to opt-out or object to the Settlement.

## VI.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court preliminarily approve the parties' proposed Settlement, and enter an order requiring notice procedures and setting a final approval hearing consistent with Plaintiffs' proposed schedule, as provided for in the Proposed Order submitted with Plaintiffs' Motion.

---

[3] Plaintiffs will more thoroughly brief the reasonableness of the requested service awards in a later fees and costs application to be heard along with their motion for final approval.

DATED: February 2, 2016          Respectfully submitted,

                                 **HAMMONDLAW, PC**


                                 By:  *s/ Julian Hammond*
                                      JULIAN HAMMOND, CA Bar No. 268489
                                      *Attorneys for Plaintiff, Tracy Davis*


DATED: February 2, 2016          Respectfully submitted,

                                 **KAZEROUNI LAW GROUP, APC**


                                 By:  *s/ Abbas Kazerounian*
                                      ABBAS KAZEROUNIAN, ESQ.
                                      *Attorneys for Plaintiff, Tiffany Lapuebla*

                                 *Interim Co-Lead Counsel for the Class*


                                 Todd A. Seaver (SBN 271067)
                                 Victor S. Elias (SBN 262269)
                                 **BERMAN DEVALERIO**
                                 One California St., Suite 900
                                 San Francisco, CA 94111
                                 Telephone: (415) 433-3200
                                 Facsimile: (415) 433-
                                 6382tseaver@bermandevalerio.com
                                 velias@bermandevalerio.com

                                 **HYDE & SWIGART**
                                 Joshua B. Swigart, Esq. (SBN: 225557)
                                 josh@westcoastlitigation.com
                                 Sara Khosroabadi, Esq. (SBN: 299642)
                                 sara@westcoastlitigation.com
                                 2221 Camino Del Rio South, Suite 101
                                 San Diego, CA 92108-3551
                                 Telephone: (619) 233-7770
                                 Facsimile:  (619) 297-1022

                                 *Counsel for Plaintiffs*