**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Mona Amini, Esq. (SBN: 296829)
mona@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN 225557)
josh@westcoastlitigation.com
Sara Khosroabadi, Esq. (SBN 299642)
sara@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

*Counsel for Plaintiff Tiffany Lapuebla*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TRACY DAVIS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiff,<br>v.<br>**BIRCHBOX, INC.,**<br><br>Defendant. | **Lead Case No.:**<br>**3:15-CV-00498-BEN-BGS**<br><br>**Case Consolidated with:**<br>**3:15-CV-00214-BEN-BGS**<br><br>THIS DOCUMENT RELATES TO: ALL CASES<br><br>**DECLARATION OF ABBAS KAZEROUNIAN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| **TIFFANY LAPUEBLA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiff,<br>v.<br>**BIRCHBOX, INC.,**<br><br>Defendant. | **Date:** March 14, 2016<br>**Time**: 10:30 a.m.<br>**Courtroom**: 5A<br>**Judge**: Hon. Roger T. Benitez |

//

DECL. OF ABBAS KAZEROUNIAN ISO PLAINTIFFS' UNOPPOSED MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

I, ABBAS KAZEROUNIAN, declare as follows:

1. I am an attorney admitted to the State Bar of California in 2007 and have been a member in good standing since that time. I have litigated cases in both state and federal courts in California, Washington, Nevada, Arizona, Arkansas, New York, New Jersey, Colorado, Georgia, Tennessee, North Carolina, Ohio, Illinois and Texas.

2. I am admitted in every federal district in California and have handled federal litigation in the federal districts of California. I am also admitted to the state bar of Texas, Illinois, Washington, the District of Columbia, Michigan, the Ninth Circuit Court of Appeals, and the Supreme Court of the United States. I am a founding partner of Kazerouni Law Group, APC ("KLG"), and co-lead counsel for the named Plaintiffs Tracy Davis and Tiffany Lapuebla ("Plaintiffs" or "Class Representatives") and the proposed Class ("Class" or "Class Members") in the above-captioned action ("Action") against Defendant Birchbox, Inc. ("Defendant" or "Birchbox") for violations of California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600 et seq.

3. I submit this Declaration in support of Plaintiffs' Unopposed Motion for Order Granting Preliminary Approval of Class Action Settlement seeking the Court's approval of the Settlement Agreement and Release ("Settlement Agreement") executed by the parties in resolution of this Action. The statements made herein are made of my own personal knowledge and, if called upon, I could and would testify competently thereto.

4. I serve as interim co-lead counsel for Plaintiffs in this Action together with Julian Hammond of HammondLaw. Hyde & Swigart (H&S) and Berman DeValerio are co-counsel for Plaintiffs. KLG, H&S, HammondLaw and Berman DeValerio are collectively referred to herein as "Plaintiffs'

1

DECL. OF ABBAS KAZEROUNIAN ISO PLAINTIFFS' UNOPPOSED MOTION FOR ORDER GRANTING PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Counsel." Together, these firms have worked closely to counsel Plaintiffs as to the overall litigation of this Action, as well as strategy, case evaluation, and class certification.

5. I have no knowledge of the existence of any conflict of interest between me, my firm, Plaintiffs' Counsel, and Plaintiffs, on the one hand, and any Class Member, on the other hand.

6. I have substantial experience prosecuting complex consumer class action litigation on behalf of a wide variety of plaintiffs. As one of the main plaintiff litigators of consumer rights cases in the Southern District of California, I have been requested to and have made regular presentations to community organizations regarding debt collection laws and consumer rights. These organizations include Whittier Law School, Iranian American Bar Association, Trinity School of Law and Chapman Law School, University of Southern California, Irvine, and California Western School of Law. I was the principle anchor on Time Television Broadcasting every Thursday night as an expert on consumer law between 2012 and 2013. I am a member of the following organizations:

    a. Member of Consumer Attorneys Association of Los Angeles;

    b. Member of the Orange County Bar Association;

    c. Two time Former President of the Orange County Chapter of the Iranian American Bar Association;

    d. Member of National Association of Consumer Advocates;

    e. Member of Consumer Attorneys of California;

    f. Member of the Federal Bar Association; and

    g. Member of the Leading Forum of the American Association of Justice.

7. I am an adjunct professor at California Western School of Law where I teach a three-credit course in consumer law.

8. I have extensive experience prosecuting cases related to consumer issues. My firm, Kazerouni Law Group, APC, in which I am a principal, has litigated over 1000 individual based consumer cases and litigated over 400 consumer class actions. These class actions were litigated in federal courts in California, Colorado, Arkansas, Washington, Ohio, Nevada, Arizona, Tennessee, Illinois and Texas, as well as California State Courts. Approximately 95% percent of my practice concerns consumer litigation.

9. I have been named Rising Star by San Diego Daily Tribune in 2012, and Rising Star in Super Lawyers Magazine in 2013, 2014, 2015, and Super Lawyer in 2016.

10. A significant focus of Kazerouni Law Group, APC's practice concerns consumer rights litigation in general, on an individual and class basis, including several putative class actions concerning violations of California's Automatic Renewal Law (ARL).

11. I have filed and litigated numerous consumer rights class actions based on federal and state consumer statutes in the past several years. The following is a non-exhaustive list of consumer rights class actions which I am or have been personally involved in:

   a. *Hoffman v. Bank of America Corporation*, 12-CV-00539-JAH-DHB (S.D. Cal.) [Dkt. No. 67] (California class action settlement under Penal Code 632 et seq., for claims of invasion of privacy. Settlement resulted in a common fund in the amount of $2,600,000; finally approved on November 6, 2014);

   b. *Malta, et al. v. Wells Fargo Home Mortgage, et al.*, 10-CV-1290 IEG (BLM) (Served as co-lead counsel for a settlement class of borrowers in

connection with residential or automotive loans and violations of the TCPA in attempts to collect on those accounts; obtained a common settlement fund in the amount of $17,100,000; final approval granted in 2013);

c. *Conner v. JPMorgan Chase Bank, et al.*, 10-CV-1284 DMS (BGS) (S.D. Cal.) (Currently serving as co-lead counsel for the settlement class of borrowers in connection with residential loans and TCPA violations stemming from the collection of those accounts; Settlement of more than $11,000,000; finally approved);

d. *In Re: Midland Credit Management, Inc., Telephone Consumer Protection Act Litigation*, 11-md-2286-MMA (MDD) (S.D. Cal.) (Counsel for a Plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; actively involved in the MDL litigation and settlement process; Preliminarily approved for $18,000,000);

e. *In Re: Portfolio Recovery Associates, LLC Telephone Consumer Protection Act Litigation*, 11-md-02295-JAH (BGS) (Counsel for a Plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; still actively involved in the MDL litigation and settlement process);

f. *Arthur v. SLM Corporation*, 10-CV-00198 JLR (W.D. Wash.) (Nationwide TCPA settlement achieving $24.15M; final approval granted in 2012);

g. *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009-JLS-MDD (S.D. Cal.) (achieving one of the highest class member payouts in a TCPA action of $1,331.25; final approval granted in 2012);

h. *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, 10-01777-AJB-NLS (S.D. Cal.) (approved as co-lead counsel and worked to obtain a national TCPA class settlement where claiming class members each received payment in the amount of $70.00; final approval granted in 2013);

i. *Barani v. Wells Fargo Bank, N.A.*, 12-CV-02999-GPC-KSC (S.D. Cal.) (Class action settlement under the TCPA for the sending of unauthorized text messages to non-account holders in connection to wire transfers; finally approved for over $1,000,000);

j. *Sherman v. Yahoo!, Inc.*, 2014 U.S. Dist. LEXIS 13286; 13-CV-0041-GPC-WVG (S.D. Cal.) (TCPA class action where Defendant's motion for summary judgment was denied holding that a single call or text message with the use of an ATDS may be actionable under the TCPA).

k. *Olney v. Progressive Casualty Insurance Company*, 2014 U.S. Dist. LEXIS 9146 (S.D. Cal.); 13-CV-2058-GPC-NLS (Defendant's motion to dismiss or in the alternative to strike the class allegations was denied finding that debt collection calls were not exempt from coverage under the TCPA, case pending);

l. *Iniguez v. The CBE Group, Inc.*, 2013 U.S. Dist. LEXIS 127066 (E.D. Cal.); 13-CV-00843-JAM-AC (the court denying Defendant's motion to dismiss and to strike class allegations holding that the TCPA applies to any call made to a cellular telephone with an ATDS);

m. *Wilkins v. HSBC Bank Nevada, N.A.*, Case No. 12-CV-04010-SI (N.D. Ill.) (Finally approved for $39,975,000 on February 27, 2015);

n. *Martin v. Wells Fargo Bank, N.A.*, 12-CV-06030-SI (N.D. Cal.);

o. *Heinrichs v. Wells Fargo Bank, N.A.*, 13-CV-05434-WHA (N.D. Cal.);

p. *Newman v. ER Solutions, Inc.*, 11-CV-0592H (BGS);

q. *In Re Jiffy Lube International, Inc.*, MDL No. 2261 (finally approved for $47,000,000.00);

r. *Jaber v. NASCAR*, 11-CV-1783 DMS (WVG) (S.D. Cal.);

s. *Ridley v. Union Bank, N.A.*, 11-CV-1773 DMS (NLS) (S.D. Cal.);

t. *Ryabyshchuk v. Citibank (South Dakota) N.A., et al,* 11-CV-1236-IEG (WVG);

u. *Rivera v. Nuvell Credit Company LLC*, 13-CV-00164-TJH-OP (E.D. Cal);

v. *Couser v. Comenity Bank,* No. (S.D. Cal.) (Finally approved TCPA class action with common fund of $8,475,000);

w. *Fox v. Asset Acceptance, LLC*, No. 14-cv-00734 -GW-FFM (C.D. Cal.) (TCPA class action, preliminary approval for $1,000,000);

x. *Olney v. Job.com, Inc. et al.*, No. 12-cv-01724-LJO-SKO (E.D. Cal.);

y. *Stemple v. QC Holdings, Inc.*, 12-cv-01997-BAS-WVG (S.D. Cal.) (class certification granted on September 5, 2014 and awaiting preliminary approval);

z. *Newman v. AmeriCredit*, 11-cv-03041-DMS-BLM (preliminarily approved for $8,500,000 on November 26, 2014);

aa. *Lemieux v. EZ Lube, Inc. et al.*, 12-cv-01791-BAS-JLB (S.D. Cal.) (finally approved for $479,364 on December 8, 2014);

bb. *Knutson v. Schwan's Home Service, Inc. et al.*, 12-cv-00964-GPC-DHB (S.D. Cal.) (Finally approved for $ 2,535,280);

cc. *Franklin v. Wells Fargo Bank, N.A.*, Case No. 3:14-cv-02349-MMA-BGS (S.D. Cal.)(preliminarily approved for over $13,000,000);

dd. *Knell v. FIA Card Services*, Case No. 3:12-cv-00426-AJB-WVG (S.D. Cal.) (finally approved for $2,750,000.00 on August 15, 2014); and

ee. *Couser v. Apria Healthcare, Inc.*, 8:13-CV-00035-JVS-RNBx, (C.D. Cal.) (finally approved for $750,000.00 on March 9, 2015).

12. In addition to the present action, I am currently putative class counsel in numerous pending consumer class actions involving, *inter alia*, violations of Cal. Bus. & Prof. Code § 17200 (UCL) and § 17600 (California's Automatic Renewal Law or "ARL"), including:

   a. *Oxina v. Lands' End, Inc.*, Case No. 3L14-cv-02577-MMA-NLS, (S.D. Cal.) (co-counsel with Hyde & Swigart in Cal. Bus & Prof. Code § 17500 (FAL) and § 17533.7 (California False "Made in USA" Claim) putative class action on behalf of consumers who purchased apparel from Lands' End);

   b. *Cabrera v. Fifth Generation, Inc.,* Case No. 3:14-cv-02990-L-RBB (S.D. Cal.) (co-counsel with Hyde & Swigart in Cal. Bus & Prof. Code §§ 17500 (FAL) and 17200 (UCL) putative class action on behalf of consumers who purchased Tito's vodka);

   c. *Trax v. Lifelock, Inc.*, Case No. 3:15-cv-00220-MMA-WVG, (S.D. Cal.) (co-counsel with Hyde & Swigart in ARL and UCL putative class action on behalf of subscribers of Lifelock);

13. I have successfully argued before the Ninth Circuit Court of Appeals in *Knutson v. Sirius XM Radio*, No. 12-56120 (9th Cir. 2014), which resulted in an order reversing the district court's decision to compel arbitration.

14. An article I wrote entitled, *Principles of Litigating Consumer Class Actions*, was published in the February 2015 Edition of the Advocate.

15. Throughout this litigation, I have strived to fairly, responsibly, vigorously and adequately represent the putative class members in this action. I believe that I have been successful in that endeavor thus far and shall continue in this vein.

16. I will commit the necessary resources and time to represent the interests of the proposed class. Kazerouni Law Group, APC will commit multiple lawyers and support staff, as necessary, to the case. Kazerouni Law Group, APC also has the financial resources to represent the class.

17. Prior to filing this consolidated Action, Plaintiffs' Counsel investigated and researched the facts and circumstances underlying the pertinent issues and applicable law. This investigation and research included discussions and interviews between Plaintiffs' Counsel and Plaintiffs and other California consumers who purchased Birchbox subscriptions. Plaintiffs' Counsel also thoroughly investigated Birchbox's disclosures presented during the enrollment process and contained in the Terms and Conditions, as well as information sent to members subsequent to purchase of a Birchbox subscription. That investigation included a thorough review of the screenshots of the registration process and sign-up flow as it appeared at the time of Plaintiff's purchase (and since), copies of various emails sent to Plaintiffs confirming their purchase, and Birchbox's Terms and Conditions in effect at the time of Plaintiffs' purchase (and since). Plaintiffs' Counsel also conducted legal research into the applicable law. As a result of this in-depth investigation, Plaintiffs' Counsel arrived at the conclusion that Plaintiffs' ARL allegations are based upon identical conduct and well suited for class-wide adjudication, as Class Members experienced the same enrollment path and present identical harm to each Class Member as a result of Birchbox's statutory noncompliance.

18. Through Plaintiffs' Counsel's investigation an analysis of Defendant's data, Plaintiffs' Counsel gathered evidence sufficient to support a finding that:
    a. Birchbox is an internet-based company that sells men's and women's subscription plans for the monthly delivery of beauty

products, including sample make-up and personal care products through its website, www.Birchbox.com.

b. Birchbox subscriptions renew automatically;

c. Birchbox's Terms and Conditions and the Birchbox's subscription process failed to disclose the automatic renewal offer in a clear and conspicuous manner and in visual proximity to the request for consent to the offer;

d. Birchbox failed to obtain the consumers affirmative consent to the automatic renewal offer prior to charging their credit or debit cards; and

e. Birchbox failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information about how to cancel in a manner that is capable of being retained by the consumer.

19. Upon initiation of the named Plaintiffs' individual actions, and particularly after consolidation of Plaintiffs' cases, the parties continuously engaged in discussion and correspondence about the procedural and substantive merits of the case, as well as the costs to the parties of further litigation. Plaintiffs faced the risk of Defendant's motion to transfer venue that was fully briefed prior to the parties' mediation. Defendant has indicated that, if granted, it would then argue that New York law applies according to its governing law provision. Although Plaintiffs dispute Defendant's positions, if Defendant were to be successful in arguing that New York law applies to this action, this would jeopardize Plaintiffs' claims under the ARL or the UCL.

20. Defendant vigorously contests liability, the amount of damages, and the propriety of class certification. Although Plaintiffs dispute Birchbox's positions, they understand and considered the risks. Plaintiffs faced the

9

additional risk that the Court might conclude that the disclosures Birchbox provided fully complied with the ARL and were presented in a clear and conspicuous manner and that subscribers affirmatively consented to the offer before enrolling. Plaintiff also faces the risk that even if Birchbox's disclosures did not strictly comply with the ARL, the Court might conclude that Birchbox complied in good faith and therefore could not be held liable under Bus. & Prof. Code § 17604 (describing good faith compliance doctrine). Further, Plaintiffs face the risk that the Court might conclude that they could not properly seek recovery because they never alleged that they were not aware that Birchbox's subscription renewed automatically. As explained in further detail below, Plaintiffs damages are uncertain and there is a risk that the Court would conclude that the first month and all the months following the second month could not be included in the damages or restitution calculation. Regarding Class certification, Plaintiffs face the risk (in a contested class certification motion) that the Court might conclude that they fail to satisfy the numerous requirements of class certification enumerated in Federal Rule of Civil Procedure 23.

21. From these substantive discussions, the parties agreed that that case was appropriate for mediation based on the complexity of issues and high level of risk for both sides. In preparation for the mediation, Defendant produced, as part of an informal and confidential discovery process, an accounting of the number of Class Members likely to be certified in this Action, the type and price of subscriptions purchased by Class Members, the number of initial subscriptions and the number of automatically renewed subscriptions, and Defendant's revenue from these renewals. The parties also participated in numerous telephone calls and e-mail exchanges leading up to the mediation. Plaintiffs' Counsel thoroughly analyzed the information and data contained

DECL. OF ABBAS KAZEROUNIAN ISO PLAINTIFFS' UNOPPOSED MOTION FOR ORDER GRANTING PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT

in the information produced in informal discovery to assess the strengths and weaknesses of the claims brought in this Action, and were sufficiently informed to arrive at a realistic settlement valuation of this Action.

22. On September 16, 2015, the parties participated in a full-day mediation led by highly skilled and experienced mediator Bruce A. Friedman at JAMS in San Francisco, California. Prior to the mediation, the parties submitted detailed mediation briefs to Mr. Friedman, supported by excerpts of the evidence exchanged during the parties' informal exchange of information and the parties' respective independent research and investigation. I personally attended the mediation, along with co-counsel from H&S, HammondLaw, and Berman DeValerio.

23. During the mediation, the parties engaged in extensive arm's-length negotiations in which every aspect of a settlement was contested, including the structure of the Settlement. In discussions regarding the strengths and weaknesses of each other's contentions, Defendant strongly asserted its position that only very limited damages were available, that Class certification was not warranted, and its argument that on the merits Plaintiffs would be unsuccessful.

24. While the parties were unable to reach an agreement at the mediation, the parties continued to negotiate in good faith with the mediator's assistance over the months following the mediation. These negotiations included a meeting with Defendant's Counsel, Gavin Rooney, at Defendant's Counsel's office in New York City on October 29, 2015, attended by myself and co-lead counsel Julian Hammond of HammondLaw and one of his associates, during which the parties reached an agreement as to the general terms and structure of the monetary and injunctive relief to be afforded the Class as part of the Settlement.

25. This Settlement achieved the goals of the lawsuit through a combination of an agreement to modify Birchbox's subscription checkout flow and to provide a credit to settlement class members for use on the Birchbox website. Specifically, the settlement includes Birchbox's agreement to provide clear and conspicuous disclosures regarding its automatically renewing subscription in the purchase flow and its website Terms and Conditions, and to require consumers to affirmatively consent to Birchbox's Terms and Conditions in compliance with the ARL. These changes were made as a result of this action.

26. In addition to these changes, the Settlement provides that all Class Members who do not opt-out with a credit good for the purchase of future products or subscriptions from Birchbox its website. Class Members who subscribed to the Women's Subscription will receive two $5 credits, to be used separately, equivalent to a total of $10 credit for each Women's subscriber; and Class Members who subscribed to the Men's Rebillable Subscription will receive two $10 credits, to be used separately, equivalent to a total of $20 credit for each Men's Subscriber. These credits represent the value of a one-month subscription for each Class Member. With a total of 147,915 class members (consisting of 138,606 Women's Subscribers and 9,309 Men's Subscribers), the Settlement value is approximately $1,572,240.00.

27. This agreement was reached prior to engaging in any discussions regarding attorneys' fees, costs, or incentive awards to Plaintiffs. Specifically, the proposed attorneys' fees and costs, which shall not to exceed Three Hundred Thousand Dollars ($300,000) was only discussed after the material terms of the Settlement and the benefit to the Class Members was agreed upon.

28. Following the agreement on consideration to the class and injunctive relief, the parties engaged in continuous email and telephonic communications

between the mediator and the parties regarding attorneys' fees and costs. Finally, on January 7, 2016, the parties agreed to a mediator's proposal of general settlement terms including attorneys' fees, and immediately began drafting a settlement agreement containing all specified terms. After several rounds of revisions, the parties executed the Settlement Agreement now presented to this Court for approval.

29. Based on my experience with similar class actions and my investigation, research, and knowledge of the specific facts and legal issues in the Action, I believe that the Settlement Agreement is fair, adequate, reasonable, and appropriate.

30. In representing Plaintiffs and conducting negotiations on behalf of the absent putative Class, Plaintiffs' Counsel engaged in the following analysis of the strengths and weaknesses of the substantive and class allegations in this Action.

31. The ARL imposes detailed information, notice, and consent requirements on businesses that make automatic renewal or continuous service offers to California consumers. This law was passed in response to increasing complaints from consumers about unwanted charges on their credit cards for products and/or services that they did not explicitly request or know they were agreeing to. The ARL makes it unlawful for businesses to (1) fail to present automatic renewal terms in a "clear and conspicuous manner" before the subscription is fulfilled and in close proximity to the request for consent to the offer; (2) charge a consumer's credit or debit card or third-party account without first obtaining the consumer's affirmative consent to the agreement containing the offer terms; (3) fail to provide a consumer with a retainable acknowledgment containing the terms of the automatically renewing offer and cancellation information.

32. Under the ARL, the failure of the offeror of the subscription to comply with the specified notice and consent requirements gives the consumer the right to keep as an unconditional gift whatever the business sent him/her. See Bus. & Prof. Code § 17603. This provision forms the basis for the monetary relief in the Settlement Agreement.

33. Although Plaintiffs dispute this, there is a risk that Birchbox may be able to successfully argue that the first month of subscription should not be deemed an unconditional gift because it was not a subscription month that renewed unbeknown to subscribers. Moreover, given that Class Members had Birchbox's goods delivered monthly to their doorsteps, even those Class Members who were unaware of the automatic renewal immediately upon signing up would have learned of it upon receiving the deliveries. Although Plaintiffs dispute the arguments, should the Court adopt such arguments, damages could be limited to a refund of one month subscription. Thus, while Plaintiffs contend that a jury could require Defendant to refund the value of subscription for all automatically renewing months during the Class Period (i.e., the first or second month through the last month of subscription), such a result is not guaranteed.

34. The ARL's recently enacted provisions leave many open questions regarding what conduct constitutes a violation, as well as what conditions entitle consumers to a monetary remedy and how it should be calculated. These unsettled questions pose substantial risks to Plaintiff's ability to assure a recovery on behalf of the Class and assure protracted litigation and likely appeals if no settlement was reached. This is especially true in light of the fact that to Plaintiffs' Counsel's knowledge, no plaintiff has yet obtained either class certification or a class-wide remedy by court order in a fully litigated (i.e., not settled) action brought under the ARL.

14
DECL. OF ABBAS KAZEROUNIAN ISO PLAINTIFFS' UNOPPOSED MOTION FOR ORDER GRANTING PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT

35. The Parties strongly disagree regarding the merits of their respective claims and defenses and there is substantial uncertainty concerning the ultimate outcome, including whether the Actions would proceed in California or New York, and whether the Actions would be certified as a class and allowed to proceed as a class action.

36. Further litigation would have also resulted in significant delay. First, the Court would rule on Defendant's pending motion for transfer of venue based on the forum selection clause in its Terms and Conditions that Birchbox argued governed its relationship with Plaintiffs and the Class Members. Defendant has indicated that, if granted, it would then argue that New York law applies pursuant to the governing law provision. Although Plaintiffs dispute Defendant's positions, if Defendant was successful in arguing that New York law applies, this would jeopardize Plaintiffs' claims because New York's auto renewal statute does not provide for damages.

37. Further, Plaintiffs would file a motion for class certification. The class certification process and the extensive discovery and briefing required, a process that could take around one year. If the Court denied class certification, Plaintiffs' class claims would be worthless. And if the Court were to certify the proposed classes, trial preparation would require approximately an additional year for further discovery, motion practice, and investigation. At the end of the trial on the merits, Plaintiffs could win and collect for all the months following the initial subscription month, could win and collect the value of one month of subscription only, or lose and collect nothing. Any appeals following trial would only add delay and risk.

38. Plaintiffs' Counsel therefore seriously considered the expense, complexity, and delay associated with continued litigation. In response, Plaintiffs' Counsel carefully analyzed the settlement in light of the parties' respective

1. positions and elected that the immediate, certain, and substantial payments offered by Defendant to settle this case was fair, reasonable, and adequate relief to the Class.
39. Plaintiffs' Counsel considers the settlement in this case to be an excellent result.
40. The incentive award of $2,500 to be paid to each Named Plaintiff is reasonable and fair. The service award is intended to compensate Plaintiffs for the critical role they have each played in this case, the substantial time, effort, and risks undertaken in helping secure the result obtained on behalf of the settlement class. In agreeing to serve as Class Representative, Plaintiffs formally agreed to accept the responsibilities of representing the interests of all Class Members. They assisted Plaintiffs' Counsel in the investigation for the case; assisted in preparing and evaluating the case for mediation; and provided Plaintiffs' Counsel with guidance to evaluate and approve the proposed settlement on behalf of the Settlement Class. Plaintiffs' participation and assistance was critical to the success of this litigation and the enforcement of the ARL protections. Without their commitment to come forward and serve as Class Representatives, this litigation would not be possible. Additionally, Plaintiffs agreed to assume the potential obligation to pay Defendant's costs, a potentially large amount, if they did not prevail at trial. Finally, none of the Plaintiff's claims are antagonistic to the interests of the class. Defendant does not oppose this request.
41. The settlement calls for the payment of up to $300,000 for attorneys' fees and costs. This amount is fair, reasonable, and adequate to compensate Plaintiffs' Counsel for the substantial work devoted to this case and for the out-of-pocket litigation costs paid by counsel, and for the risk assumed in taking on a hotly disputed case brought under a relatively new and untested statute.

The attorneys' fees and costs award is intended to reimburse Plaintiffs' Counsel for the litigation costs incurred and for all work already done by counsel as well as for all the work remaining to be done in carrying out and overseeing the notification to the Class Members, communication with Class Members regarding their claims, and the administering of the settlement if it is preliminarily approved. Attorneys' fees and costs were not discussed until all the material terms of the settlement were agreed upon and will be paid by Birchbox, separate and apart from any consideration being paid directly to the Class.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of February 2016, pursuant to the laws of the United States and the State of California at Costa Mesa, California.

/s/ *Abbas Kazerounian*
ABBAS KAZEROUNIAN, ESQ.
ATTORNEY FOR PLAINTIFF TIFFANY LAPUEBLA
AND INTERIM CO-LEAD COUNSEL FOR THE CLASS

17
DECL. OF ABBAS KAZEROUNIAN ISO PLAINTIFFS' UNOPPOSED MOTION FOR ORDER GRANTING PRELMINARY APPROVAL OF CLASS ACTION SETTLEMENT